646 A.2d 498

ECHELON GLEN COOPERATIVE, INC. AND BALA PROPERTIES GROUP, INC., PLAINTIFFS–RESPONDENTS, v. VOORHEES TOWNSHIP, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 26, 1994—Decided August 4, 1994.

442

Before Judges BRODY, STERN and KEEFE.

*V. Richard Ferreri* argued the cause for appellant Voorhees Township (*Ferreri & Wade,* attorneys; *Mr. Ferreri* on the brief).

DJ1⬜*Keith A. Bonchi* argued the cause for appellant Richard Simon, trustee (*Goldenberg, Mackler & Sayegh,* attorneys; *Mr. Bonchi* on the letter brief).

*William F. Saldutti, III,* argued the cause for respondent Bala Properties Group, Inc., as receiver for Echelon Glen Cooperative, Inc. (*Dembo & Saldutti,* attorneys; *Mr. Saldutti* on the letter brief).

*Sanford E. Chernin,* attorney for *amicus curiae,* the Tax Collectors and Treasurers Association of New Jersey, Inc. *(Mr. Chernin* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Pursuant to leave granted, defendant Voorhees Township appeals the Tax Court's order denying its motion to dismiss plaintiff's appeal from the 1991 tax assessment for three of its properties in the Township.[1] We also granted Richard Simon, purchaser of the tax sale certificates for two of plaintiff's properties, leave to appeal the denial of his motion to intervene in order to pursue dismissal of plaintiff's tax appeal. The Township and Simon contend that the Tax Court may not consider the tax appeal because plaintiff failed to pay the taxes due on the property, as required by *N.J.S.A.* 54:3–27, and that the statutory prerequisite to such an appeal is not satisfied by the sale of certificates which provide revenues in lieu of the taxes. The Township also contends that the Tax Court erred in holding that plaintiff was excused from complying with *N.J.S.A.* 54:3–27 in filing the appeal without payment of the taxes because it was in receivership and therefore was indigent.

On August 13, 1991, plaintiff filed a complaint with the Tax Court[2] appealing the 1991 assessments on Block 150.03, Lot 1, and Block 150.14, Lots 2 and 8, alleging that they were "arbitrary, unreasonable, unequal and discriminatory in comparison with oth-

---

[1] Plaintiff Bala Properties Group is the receiver for Echelon Glen Cooperative authorized to pursue the tax appeal by the United States District Court. We granted leave to Richard Simon, trustee for the tax sale certificate purchaser, to appeal from the Tax Court's denial of his motion to intervene in order to pursue dismissal of the tax appeal. At the original oral argument before us, the Township asked for leave to appeal *nunc pro tunc* from the denial of its motion to dismiss the tax appeal. We granted that motion.

[2] Since the assessments exceeded $750,000, plaintiff could elect to appeal and proceed directly to the Tax Court. *N.J.S.A.* 54:3–21; *R.* 8:3–5(a)(3).

er assessments in [the] taxing district." However, plaintiff made no payments on the assessments.[3]

On April 29, 1992, Simon purchased from defendant Township tax sale certificates for Block 150.03, Lot 1, and Block 150.14, Lot 2, for $336,818 and $357,236, respectively. Each certificate bore an interest rate of 18% and was purchased for the amount of the 1991 taxes on the lots plus sewer and utility charges.[4] The sales were conducted pursuant to *N.J.S.A.* 54:5–19 requiring such a sale after April 1 following the fiscal year in which they became in arrears. Neither defendant Township nor plaintiff disputes Simon's contention that the tax sale certificates did not indicate that the 1991 assessment had been appealed by the property owner. No information about the appeal was conveyed incident to the tax sale.

Before the Tax Court, plaintiff estimated that the true value of the properties was approximately $9,000,000, whereas, defendant estimated it to be approximately $16,000,000. It was therefore apparent that the property had been over assessed at $20,400,000. The tax appeal was, in any event, adjourned to permit plaintiff and the Township to reach a settlement after they received "their respective finalized appraisals."

However, on September 14, 1993, defendant Township filed a motion to dismiss the complaint on the ground that *N.J.S.A.* 54:51A–1(b) required that taxes be paid before the appeal could be filed. The motion was denied.

The Tax Court also denied Simon's motion to intervene. He asserted that if the assessment was reduced and the taxes paid, his interest would be jeopardized and that he was, therefore, entitled to intervene in support of dismissal of the appeal. We

---

[3] We were advised that an appeal was filed from the 1992 assessment but the record does not contain such a complaint. We have also been told plaintiff did not pay the taxes therefor.

[4] A third party purchased the certificate for the third lot.

granted him leave to appeal after learning that the Township initially decided not to pursue the dismissal.

In a letter opinion filed pursuant to *R.* 2:5–1(b), the Tax Court held that under *Woodlake Heights Homeowners Ass'n, Inc. v. Middletown Tp.,* 7 *N.J.Tax* 364, 367 (App.Div.1984), an indigent taxpayer unable to pay its real estate taxes must be allowed to maintain a tax appeal. It ruled that because plaintiff was in receivership, the taxes did not have to be paid for plaintiff to "continue to pursue its appeal." The Tax Court also noted that the 1991 appeal could not be dismissed because "plaintiff's 1991 real estate taxes had been paid by the purchaser of a tax sale certificate." The judge relied on *Freehold Office Park v. Freehold Township,* 12 *N.J.Tax* 433 (Tax 1992), in so holding.

## I.

We recently rejected the notion that there is a constitutional right to pursue a tax appeal before payment of the taxes:

> Plaintiff appeals contending its inability to pay should constitute an exception to the requirements of *N.J.S.A.* 54:3–27 so plaintiff's due process rights can be protected. Alternatively, it argues the tax court erred in denying it a hearing on the issue of ability to pay. We find the contentions clearly without merit and affirm. *See R.* 2:11–3(e)(1)(D), (E).

> We are bound by the *New York, Susequehanna and W.R.R. Co.,* [44 *N.J.* 491, 210 *A.*2d 214 (1965)] holding. If an exception is to be carved out, as plaintiff argues it must be, it is for the Supreme Court to do so.

> Even so, we conclude *Boddie v. Connecticut,* 401 *U.S.* 371, 91 *S.Ct.* 780, 28 *L.Ed.*2d 113 (1971), does not dictate an exception in this case.

> [*Jefferson–Halsey Roads Associates, L.P. v. Parsippany–Troy Hills Tp.,* 13 *N.J. Tax* 138, 139 (App.Div.1993).]

Significantly, the Supreme Court dismissed the appeal in *Jefferson–Halsey Roads Associates* "for failure to state a substantial constitutional issue." 135 *N.J.* 298, 639 *A.*2d 299 (1994). Hence, if the purchase of a sale certificate is not the equivalent of payment for purposes of the taxpayer's right to pursue an appeal, the tax appeal must be dismissed.

## II.

The question before us, therefore, is whether a property owner appealing a property tax assessment directly to the Tax Court is relieved of the obligation imposed by *N.J.S.A.* 54:3–27 to pay property taxes as a condition of appeal when a tax sale certificate is sold by the municipality to a third party. It is acknowledged that the public sale of certificates by the municipality generates the revenues which it would have otherwise obtained by payment of the taxes. The Township and Simon contend that the payment of taxes is a statutory prerequisite for an appeal and that purchase of a tax sale certificate does not relieve a property owner of that obligation. Simon and the amicus emphasize that the Tax Court's decision will undermine the legislative desire to encourage the purchase of tax sale certificates because a successful appeal may reduce the interest a purchaser earns on the certificate. The parties seem to agree that had the municipality filed a timely motion to dismiss the appeal, the appeal may have been dismissed before the tax certificate was sold. Moreover, if the payment of taxes is a jurisdictional prerequisite to the appeal, the failure of the Township to pursue a dismissal in a timely fashion would be irrelevant.

*N.J.S.A.* 54:3–27 now provides, in part, that:

A taxpayer who shall file an appeal from an assessment against him shall pay to the collector of the taxing district no less than the total of all taxes and municipal charges due, up to and including the first quarter of the taxes and municipal charges assessed against him for the current tax year in the manner prescribed in R.S. 54:4–66.

The statute applies to both an appeal to a county board of taxation and a direct appeal to the Tax Court.[5] *Powder Mill I Assocs. v. Hamilton Tp.*, 190 *N.J.Super.* 63, 66–70, 461 *A.*2d 1199 (App.Div.

[5] *N.J.S.A.* 54:3–27 was amended by *L.*1977, *c.* 357, § 1 to require "no less than the first three quarters of the taxes assessed against him for the current tax year" as was required at the time of this tax appeal, and subsequently by *L.*1991, *c.* 75, § 30 to require "the total of all taxes and municipal charges due," effective January 1, 1992. *See L.*1991, *c.* 75, § 50. See Historical and Statutory Notes after *N.J.S.A.* 54:3–27 in main volume and 1994 pocket part.

1983). *N.J.S.A.* 54:3–21 authorizes appeals to the county board of taxation and, in the case of assessed valuation in excess of $750,000, directly with the Tax Court. The second paragraph of *N.J.S.A.* 54:3–27 expressly states that the payment of the required taxes pending appeal "shall in nowise prejudice the status of the appeal or the rights of the appellant to prosecute such appeal, before ... the tax court." [6] Hence, it is clear that *N.J.S.A.* 54:3–27 applies to a direct appeal authorized by *N.J.S.A.* 54:3–21. *See also Powder Mill I Assocs. v. Hamilton Tp., supra,* 190 *N.J.Super.* at 66–70, 461 *A.*2d 1199.

*N.J.S.A.* 54:3–27 provides "relief to municipalities from the financial hardship resulting from an interruption in the flow of tax revenues" if taxpayers could appeal assessments and delay payments pending appeal. *Lecross Assocs. v. City Partners,* 168 *N.J.Super.* 96, 99, 401 *A.*2d 1099 (App.Div.), *certif. denied,* 81 *N.J.* 294, 405 *A.*2d 837 (1979). Prior to 1975, an appealing taxpayer was required to pay only the amount of taxes for which he or she would be obligated to pay if successful on appeal, thus creating a great financial strain on municipalities. *Lecross Assocs. v. City Partners, supra,* 168 *N.J.Super.* at 98, 401 *A.*2d 1099. The hardship was particularly severe because, pending the appeal, municipalities could not conduct a tax sale for the difference between what the taxpayer had paid and the full assessment. *Ibid.* The 1975 amendments to *N.J.S.A.* 54:3–27 were designed to ensure that tax revenues would not be disrupted during assessment appeals. The 1975 Act required payment of 90% of the assessment, while a 1977 amendment required payment of "the first three quarters of the taxes assessed ... for the current tax year." *See L.*1975, *c.* 361, *L.*1977, *c.* 357, § 1. *See also Rt. 88 Office Assoc. v. Brick Tp.,* 13 *N.J. Tax* 14, 21 (Tax 1992). As

---

[6] At the time the tax appeal was filed the reference was made to the State Board of Tax Appeals, but reference to the Tax Court was substituted therefor in *L.*1991, *c.* 75 § 30, which became effective on January 1, 1992. *See L.*1991, *c.* 75 § 50. However, *N.J.S.A.* 54:3–21 authorized appeals involving assessments over $750,000 to the Tax Court since *L.*1978, *c.* 102 § 2, effective August 16, 1978.

noted, however, the 1991 amendment required payment of the "total of all taxes and municipal charges due, up to and including the first quarter of the taxes and municipal charges assessed ... for the current tax year." *L.*1991, *c.* 75, § 30.[7]

However, the payment under *N.J.S.A.* 54:3–27 is not jurisdictional. *Powder Mill I Assoc. v. Hamilton Tp., supra,* 190 *N.J.Super.* at 70, 461 *A.*2d 1199; *Lecross Assocs. v. City Partners, supra,* 168 *N.J.Super.* at 99, 401 *A.*2d 1099. The non-payment does not itself require dismissal of the appeal until the municipality seeks relief "through the filing of an appropriate defensive pleading, a motion to dismiss, or even by the institution of tax foreclosure proceedings." *Lecross, supra,* 168 *N.J.Super.* at 100, 401 *A.*2d 1099. Hence, where the taxes were paid before a municipality's motion to dismiss the appeal was heard, we found "that the statutory requirements had been satisfied" and "the Tax Court had no continuing warrant to dismiss any of the complaints" filed directly in that court. *Powder Mill I Assoc., supra,* 190 *N.J.Super.* at 70, 461 *A.*2d 1199. *Accord Essex County v. City of East Orange,* 214 *N.J.Super.* 568, 574, 520 *A.*2d 788 (App.Div.), *certif. denied* 107 *N.J.* 120, 526 *A.*2d 189 (1987). Thus in this case the Tax Court properly denied dismissal if the revenues generated by the sale of the tax certificate in advance of the defendant's motion were the equivalent of the payment of taxes.

It is true, as defendant notes, that *N.J.S.A.* 54:51A–1(b) requires that the taxes must be paid at the time a complaint is filed. But that statute deals with appeals to the Tax Court following judgments of the county boards of taxation. And those appeals deal with matters already adjudicated by a quasi-judicial body, generally concern lesser assessments with no right of direct appeal to the Tax Court, and involve appeals which must be considered by the county boards within three months. *See*

---

[7] The 1991 amendment was incident to an amendment of the time for payments of taxes and appeals from assessments. The time for appeal was amended from August 15 to April 1. *See N.J.S.A.* 54:3–21; 54:4–66; *L.*1991, *c.* 75, § 28, 38. *See also L.*1991, *c.* 89, § 4; *L.*1991, *c.* 410, § 4.

*N.J.S.A.* 54:3–26. *See also Schneider v. City of East Orange,* 196 *N.J.Super.* 587, 595, 483 *A.*2d 839 (App.Div.1984), *aff'd o.b.* 103 *N.J.* 115, 510 *A.*2d 1118, *cert. denied* 479 *U.S.* 824, 107 *S.Ct.* 97, 93 *L.Ed.*2d 48 (1986). *Schneider, supra,* held that *N.J.S.A.* 54:2–39 (the predecessor to *N.J.S.A.* 54:51A–1) did not violate due process or equal protection guarantees because taxpayers appealing assessments under *N.J.S.A.* 54:3–27 were subjected to a less stringent payment-upon-appeal requirement than those appealing under *N.J.S.A.* 54:2–39.[8] Thus, while payment of the tax is a jurisdictional prerequisite for an appeal to the Tax Court from a judgment of a county board of taxation, it is not for a direct appeal under *N.J.S.A.* 54:3–21. *Id.* at 593–94, 483 *A.*2d 839; *Stewart v. Hamilton Tp.,* 7 *N.J.Tax* 368 (Tax 1984); *see also Farrell v. City of Atlantic City,* 10 *N.J.Tax* 336, 344 (Tax 1989).

Because pre-payment of the taxes is not a jurisdictional prerequisite to this direct appeal to the Tax Court, the appeal did not have to be dismissed if the municipality did not move to dismiss the appeal or pursued dismissal only after the taxes were paid. The question before us then does not really turn on the issue of jurisdiction but on whether the tax sale certificate is the equivalent of the payment of taxes.

*Freehold Office Park v. Freehold Tp., supra,* 12 *N.J.Tax* 433, held that the Legislature did not intend that a direct appeal to the Tax Court be dismissed where the municipality has received, through the purchase of a tax sale certificate, the revenues which it would have obtained through the prompt payment of taxes. Freehold Office Park, the property owner, had not paid its 1990

---

[8] As we noted above with respect to chronology of *N.J.S.A.* 54:3–27, that statute has again been amended since the decisions in *Lecross, Schneider* and *Powder Mill I* without substantive amendment affecting the issue before us. The amendments therefore support our interpretation of the statute and the difference between *N.J.S.A.* 54:3–27 and 54:51A–1. *See L.*1991, *c.* 75, § 30. *See also Massachusetts Mut. v. Manzo,* 122 *N.J.* 104, 116, 584 *A.*2d 190 (1991); *Quaremba v. Allan,* 67 *N.J.* 1, 14, 334 *A.*2d 321 (1975) (Legislature deemed to know judicial construction of statute at time of subsequent action and non-amendment supports judicial interpretation).

property taxes at the time of its direct appeal to the Tax Court in August 1990. *Id.* at 436. After accepting partial payments from the taxpayer, the municipality ultimately sold a certificate for the balance of the 1990 taxes, interest and tax sale costs in August 1991. *Id.* at 436, 442. In September 1991 the municipality moved to dismiss the appeal to the Tax Court for non-payment of taxes. The court denied the motion, reasoning that *N.J.S.A.* 54:3–27 was designed to prevent the interruption of tax revenues to a municipality and that "[t]he receipt of tax revenues by a municipality upon the sale of a tax sale certificate to a third party satisfies the purpose of *N.J.S.A.* 54:3–27 by providing tax revenues to the municipality without regard to the pendency of a tax appeal." *Id.* at 440. The court noted that the municipality could have brought a timely motion to dismiss the appeal before the tax sale was held and that the municipality would have been entitled to judgment if the taxpayer had not by then made the payment. In essence, the court concluded that granting the municipality's motion to dismiss after sale of the tax certificates "would not add one dollar to municipal revenues" which was the underlying purpose of *N.J.S.A.* 54:3–27. *Id.* at 442.

We agree with the Tax Court that as the purpose of *N.J.S.A.* 54:3–27 is to ensure municipal revenues during a tax appeal, dismissal of plaintiff's appeal was not appropriate where the municipality did, in fact, receive those revenues by the time the non-jurisdictional motion to dismiss was filed.

Amicus and Simon urge that the interests of tax sale purchasers will be jeopardized by allowing a tax appeal such as this to proceed because, if it is successful, it is likely that the holder will not receive the full amount of interest for which it bargained. They suggest that if an assessment is lowered, a municipality will invoke *N.J.S.A.* 54:5–43 to refund to the purchaser the amount representing the excess taxes which it paid, but will give the purchaser only the legal rate of interest on this amount rather than the rate contained in the certificate. *See Tontodonati v. City of Paterson,* 229 *N.J.Super.* 475, 484–85, 551 *A.*2d 1046 (App.Div.),

*certif. denied* 117 *N.J.* 35, 563 *A.*2d 808 (1989). They also contend that the Tax Court's holding here will thus discourage investment in tax sale certificates, to the detriment of municipalities. *Freehold Office Park, supra,* 12 *N.J.Tax* at 442, rejected a similar argument, 12 *N.J.Tax* at 442, and the policy advocated by amicus and Simon is somewhat inconsistent with legislative policy which discourages a bar to the right of redemption. *N.J.S.A.* 54:5–85. In any event, the policy issue is one for the Legislature to address.[9]

### III.

"The holder of a tax sale certificate does not have title to the land. The holder's purchase of the certificate at a tax sale does not divest the delinquent owner of his title to the land." *Jefferson Tp. v. Block 447A, Lot 10,* 228 *N.J.Super.* 1, 4, 548 *A.*2d 521 (App.Div.1988), citing *Gasorek v. Gruber,* 126 *N.J.Super.* 511, 515, 315 *A.*2d 706 (App.Div.1974). Rather, the certificate holder succeeds to the municipality's lien and has an "inchoate interest" which consists of "three significant rights." *Ibid.* The certificate holder has

> the right to receive the sum he paid for the certificate with interest at the redemption rate for which the property was sold, . . . the right to redeem from any other holder a subsequently issued tax sale certificate, . . . and, most important, the holder has the right to acquire title by foreclosing the equity of redemption of all outstanding interests, including the owner's.
>
> [*Id.* at 4–5, 548 *A.*2d 521.]

Simon urges that his rights require intervention particularly because his investment may be far more valuable if the assessment is not reduced and the owner cannot afford to redeem.

The Tax Court has recently held that a purchaser of a tax sale certificate does not have standing to appeal an assessment. *Northfield City v. Zell,* 12 *N.J.Tax* 180 (Tax 1991). We do not explore the issue because Simon was granted leave to appeal to

---

9 In light of our disposition we need not consider the impact of the doctrines of estoppel and judicial estoppel as bars to the Township's present position.

challenge, in the context of an intervention application, the Township's failure to pursue dismissal of the tax appeal. As the Township has changed its position and we have considered Simon's arguments on the subject for which leave to appeal was granted, we are not convinced that the denial of Simon's motion to intervene remains a viable issue.

## IV.

The order denying dismissal of the tax appeal is affirmed, and the matter is remanded to that court for consideration of the appeal. No costs shall be awarded on this appeal.