289 N.J. Super. 116 (1996)
672 A.2d 1292
RICHARD SIMON, TRUSTEE; AND BETTY SIMON, TRUSTEE, PLAINTIFFS-APPELLANTS,
v.
THE TOWNSHIP OF VOORHEES, A MUNICIPAL CORPORATION; ECHELON GLEN COOPERATIVE, INC., A NEW JERSEY CORPORATION; AND AETNA LIFE INSURANCE COMPANY, A CONNECTICUT CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 6, 1996.
Decided March 28, 1996.
*117 Before Judges SHEBELL, STERN and NEWMAN.
*118 Ben J. Slavitt argued the cause for appellants (Slavitt, Fish & Cowen, attorneys; Ronald G. Schecter, on the brief and reply brief).
Dean C. Waldt argued the cause for respondent Township of Voorhees (Davis, Reberkenny & Abramowitz, attorneys; Mr. Waldt, on the brief).
Respondents Echelon Glen Cooperative and Aetna Life Insurance Company rely on brief filed on behalf of Township of Voorhees.
The opinion of the court was delivered by STERN, J.A.D.
In Echelon Glen Co-op, Inc. v. Voorhees Tp., 275 N.J. Super. 441, 646 A.2d 498 (App.Div.), certif. denied, 138 N.J. 272, 649 A.2d 1291 (1994), we held that the sale of tax sale certificates relieved the real property owner of the statutory obligation pursuant to N.J.S.A. 54:3-27 of paying the property taxes as a prerequisite to an appeal from the assessment. The tax appeal was, therefore, permitted to go forward.
Plaintiffs in this action were the purchasers of the certificates. Between 1991-1993 they paid $2,635,204.40 for seven tax sale certificates issued with respect to the property. The terms of plaintiffs' successful bids included an interest rate of 18% per annum, together with a 6% penalty on the amount of the delinquency, as fixed by the municipality on each certificate. See N.J.S.A. 54:5-32; 54:4-67. See also 54:4-58 to -69.
After our opinion was rendered, the property owner and the municipality entered into a Stipulation of Settlement of the tax appeal in the Tax Court. The Stipulation of Settlement provided for the reduction of the assessment of Echelon Glen's property from $20,400,000 to $10,400,000 for the years 1991-1994; the payment by Echelon Glen of $3,600,070 to the municipality as of September 13, 1994, constituting the "Prior Tax Payment" or the tax liability for the property for the tax years 1991, 1992 and 1993, *119 plus estimated accrued interest; a temporary reduction in the assessments for the tax years 1995, 1996, 1997 and 1998; and the obligation of the Township to "take all steps necessary to set aside the sale of the Certificates and void the Certificates pursuant to the Tax Sale Law, N.J.S.A. 54:5-1 et seq."
The agreement further provided for the utilization of the Prior Tax Payment by the municipality "to fund its obligation to provide a refund to holders of the Certificates, plus lawful interest thereon, pursuant to the Tax Sale Law, N.J.S.A. 54:5-1 et seq." The agreement also provided for the indemnification of the municipality by Echelon Glen
against any and all claims which may be asserted by the holders of the Certificates against the Township with respect to additional interest which may be due or owing to such holders upon the voidance of the Certificates in excess of the amount of the Prior Tax Payment [$3,600,070], plus any and all other liability which the Township may incur to the Certificate holders as a result of the voidance of the Certificates, whether or not said claims exceed the amount in the Escrow Fund.
Finally, the agreement required the taxpayer's dismissal with prejudice of a related federal action.
Upon entry of the Stipulation of Settlement in the Tax Court and Consent Order dismissing the federal action, the Township Committee of Voorhees Township enacted a Resolution authorizing the execution of "all legal instruments necessary to effectuate the settlements."
By seven letters, dated November 7, 1994, the municipality demanded that plaintiffs surrender their tax sale certificates to the municipality in consideration of the repayment to plaintiffs of the purchase price, together with 5% per annum interest, but without penalty. Plaintiffs refused to accept the municipality's tender and filed their Complaint in Lieu of Prerogative Writ. The complaint was dismissed on defendants' motion, and plaintiffs appeal.
While the action was pending, plaintiffs accepted the municipality's tendered refund of $2,635,204.40 representing the full refund of plaintiffs' purchase price of the tax sale certificates at issue, plus interest at the post-judgment rate in effect on an annual basis from the date of the sale of the tax sale certificates through the *120 original date of tender of November 9, 1994.[1] The parties agreed that acceptance of the tender was without prejudice to their respective positions in the litigation.
Plaintiffs argue that the actions of the municipality here were the equivalent of an actual or de facto redemption and that they are entitled to the redemption value of the certificates. Plaintiffs assert that Echelon Glen and the municipality, in resolving the tax assessment appeal and the federal litigation by way of the Stipulation of Settlement, "sought to circumvent the statutory redemption requirements by artificially and arbitrarily declaring all the real estate taxes (and sewer and [Camden County Municipal Utility Authority] charges) void ab initio and by equally artificially reimposing them de novo in the reduced amount, ... thereby rationalizing their declaration that the certificates were void." Plaintiffs further contend that there is no statutory authority for the vacation of the certificates as ordered here and that they are entitled to the rates embodied in the certificates, as if there had been a redemption.
To the contrary, the municipality and property owner contend that "[t]here is absolutely no basis upon which it may be argued that any policy has at any time been enunciated either by the Legislature of this State or by the courts that the sale of a tax sale certificate should create a fixed or guaranteed yield investor market." They insist that there is no statutory prohibition preventing cancellation of the certificates, without formal redemption, upon refund of the purchase price and interest at the prevailing rate.

I.
Our statutes provide a comprehensive scheme for the sale of tax sale certificate. See N.J.S.A. 54:5-46 through -53.2. *121 They also provide a detailed mechanism by which the property owner may redeem the certificates by paying the redemption amount together with the interest and penalty. See N.J.S.A. 54:5-54 to -76. The taxpayer and municipality contend this case is controlled by N.J.S.A. 54:5-54, and argue that "pursuant to N.J.S.A. 54:5-43 the township has lawfully refunded to the plaintiff the purchase price paid for the tax sale certificates, with lawful interest." They point to no other statutory authority for their action.
N.J.S.A. 54:5-43 provides:

If the assessment itself is valid and the tax, assessment or other municipal charge, or any part thereof, is justly due, no sale shall be set aside, except on condition that the amount due shall be paid to the municipality for the use of the holder of the certificate of sale by the person applying to set it aside. If the sale shall be set aside, the municipality shall refund to the purchaser the price paid by him on the sale, with lawful interest, upon his assigning to the municipality the certificate of sale and all his interest in the tax, assessment or other charges and in the municipal lien therefor, and the municipality may readvertise and sell if the municipal lien remains in force.
(Emphasis added.)
The statute thus provides the basis on which a tax sale certificate may be vacated or "set aside." Brinkley v. Western World, Inc., 281 N.J. Super. 124, 129, 656 A.2d 872 (Ch.Div. 1995). It does not provide that it can be "set aside" as part of a settlement of a dispute over the unpaid taxes which gave rise to their issuance even when the settlement, as here, pertains to a claim of an "invalid" (as opposed to an "over" or excessive) assessment. And it cannot be set aside merely because of an excessive assessment because "part thereof" is still "justly due."
Moreover, in this case the settlement of the tax appeal was obtainable only because plaintiffs' purchase of the certificates provided the means by which the tax appeal could be pursued. The Legislature cannot be found to have intended, without a clearer declaration, to empower a municipality to cancel a tax sale certificate based on the settlement of a tax appeal. See N.J.S.A. 54:4-99 (providing that alteration, adjustment and settlement of past due taxes and assessments cannot "impair" the rights and *122 interests "acquired under any sale made ... for past due taxes"). And the fact that the parties, for their own interest, acknowledged some invalidity of the assessment cannot be a substitute for a judicial declaration, at least where the settlement includes payment of "part" of the assessment. To the contrary, the Stipulation expressly stated that the settlement resulted "in an assessment at the fair assessable value of the property(ies) consistent with assessing practices generally applicable in the taxing district as required by law."[2]
We thus reject the claim of the municipality and property owner that N.J.S.A. 54:5-43 authorizes a municipality to vacate a tax sale certificate based on a settlement of the tax appeal. The settlement never declared the assessment to be "invalid" and at least part of the assessment was "justly due" the municipality.
Our case law underscores the distinction between illegal or "invalid" assessments, on the one hand, and "overassessments," on the other. In Pioneer Gun Club v. Bass River Tp., 61 N.J. Super. 104, 108, 160 A.2d 183 (Ch.Div. 1960), the court invalidated a tax sale and resulting tax sale certificates. The court further ordered the refund of the purchase price of the certificates and interest pursuant to N.J.S.A. 54:5-43. Id. at 108-09, 160 A.2d 183. But there the assessment was void because the property was owned by the federal government at the time of the assessment, and the court noted the "general rule is that the holder of a tax certificate may not be reimbursed by a taxing authority in the absence of a statute giving that right." Id. at 106, 160 A.2d 183 (quoting Manor Real Estate & Trust Co. v. Linden, 8 N.J. Super. 114, 73 A.2d 612 (App.Div. 1950)).
In Tontodonati v. City of Paterson, 229 N.J. Super. 475, 551 A.2d 1046 (App.Div.), certif. denied, 117 N.J. 35, 563 A.2d 808 *123 (1989), two tax certificates were invalid because taxes had been paid prior to the tax sale with respect to one certificate and the taxes were never delinquent with respect to the other. Id. at 478, 551 A.2d 1046. We held that the sale price had to be refunded to the purchaser or its assignee pursuant to N.J.S.A. 54:5-43, id. at 483, 551 A.2d 1046, and because the sale was set aside under N.J.S.A. 54:5-43, the purchaser was not entitled to interest as provided in the certificate:
We reject, however, plaintiff's claim for interest at 18%. Although conceding that "interest payable as damages is not, in the absence of a statute authorizing the same ... generally awarded against governmental entities," plaintiff relies on the terms of the certificate, that a person must pay interest at 18% to the certificate holder in order to redeem. Plaintiff asserts that it was the parties' mutual expectation that plaintiff would receive this 18% interest as "contractual interest." But the City never agreed to pay plaintiff such a sum and plaintiff had no reason to expect that he would obtain a clear 18% on his money. His contention that the City was under a duty to pay such a sum is meritless. Municipal liens and the rights arising therefrom originate from and are fixed by statute. No statute or rule authorizes paying 18% to plaintiff under these circumstances.
[Tontodonati, supra, 229 N.J. Super. at 484-85, 551 A.2d 1046 (citations and footnote omitted).]
There is thus a clear difference between the vacation of a tax sale and subsequent refund authorized by N.J.S.A. 54:5-43 when the assessment is invalid, and the voiding of the certificates based on the settlement here. See General Motors v. Linden, 143 N.J. 336, 350, 671 A.2d 560 (1996) (holding that the State has a procedural remedy to invalidate illegal assessments); Brinkley v. Western World, Inc., supra, 281 N.J. Super. 124, 656 A.2d 872 (holding that when tax sale certificates are set aside under N.J.S.A. 54:5-43, the amount to be refunded to the holder is the purchase price plus lawful interest).
"The holder of a tax sale certificate does not have title to the land. The holder's purchase of the certificate at a tax sale does not divest the delinquent owner of his title to the land." Jefferson Tp. v. Block 447A, Lot 10, 228 N.J. Super. 1, 4, 548 A.2d 521 (App.Div. 1988). See also Echelon Glen Co-op v. Voorhees, supra, 275 N.J. Super. at 451, 646 A.2d 498. Rather, the certificate holder succeeds to the municipality's lien and has an "inchoate *124 interest" which consists of "three significant rights." Ibid. The certificate owner possesses
the right to receive the sum he paid for the certificate with interest at the redemption rate for which the property was sold, ... the right to redeem from any other holder a subsequently issued tax sale certificate, ... and, most important, the holder has the right to acquire title by foreclosing the equity of redemption of all outstanding interests, including the owner's.
[Jefferson Tp., supra, at 4-5, 548 A.2d 521.]
See also Echelon Glen, supra, 275 N.J. Super. at 451, 646 A.2d 498. The action of the municipality deprived the plaintiffs of their statutory and contractual rights without legislative authorization placing the purchasers on notice of that possibility. Cf. Dvorkin v. Dover Tp., 29 N.J. 303, 321-22, 148 A.2d 793 (1959) (Weintraub, C.J., concurring). However, it is fundamental that "rights and liabilities under tax sale proceedings rest upon" our statutory provisions. Pioneer Gun Club, supra, 61 N.J. Super. at 106, 160 A.2d 183, quoting Manor Real Estate & Trust Co., supra.
Here the plaintiffs' purchase of tax sale certificates provided the means by which Echelon Glen could pursue its tax appeal. That appeal was the basis for the settlement resulting in a substantial reduction of the assessment and the property owner's ability to retain its property. Moreover, as our opinion in Echelon Glen noted, the property owner consistently opposed plaintiffs' intervention in that litigation for the purposes of pressing for dismissal of the appeal. While this is not the occasion to consider the impact of the Entire Controversy Doctrine in these circumstances, we do note that the parties' settlement cannot bind the holders of a tax sale certificate or deprive them of their statutory rights. See also N.J.S.A. 54:4-99.
We agree with the plaintiffs that a de facto redemption occurred here. Given the indemnification provision of the Settlement Agreement, the property owner must be deemed to have redeemed the certificate. We, therefore, need not consider the respective culpability of the parties or the municipality's obligation to make any payment in the absence of statutory authority. In *125 any event, the indemnification requires payment by the taxpayer as if it redeemed in the normal course.
We reverse the grant of the municipality's cross-motion for summary judgment, and remand for further proceedings consistent with this opinion including consideration of amounts due plaintiffs which we believe should be initially addressed by the trial court in light of our holding.
NOTES
[1] The originally tendered payment of 5% was modified based on the holding in Brinkley v. Western World, Inc., 281 N.J. Super. 124, 132, 656 A.2d 872 (Ch.Div. 1995), which held that the term "lawful interest" under N.J.S.A. 54:5-43 is the post-judgment rate set forth in R. 4:42-11(a) "calculated from the date of sale."
[2] The federal complaint is not in the appendix before us. According to the Tax Court stipulation, the federal action was premised on a lien of the Federal Deposit Insurance Corporation which "pursuant to the operation of federal law" prohibited "the sale of the Certificates" and rendered "the Certificates void." The federal action apparently did not challenge "the assessment itself."