902 A.2d 272

CRUSADER SERVICING CORPORATION, PLAINTIFF–RESPON-
DENT, v. PORT AUTHORITY OF NEW YORK AND NEW JER-
SEY, RESPONDENT–APPELLANT, AND CITY OF JERSEY
CITY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 16, 2006—Decided July 18, 2006.

Before Judges COBURN, LISA, S.L. REISNER.

*George P. Cook* argued the cause appellant (*Donald F. Burke,* attorney; *Shirley J. Spira,* on the brief).

*Adam D. Greenberg* argued the cause for respondent Crusader Servicing Corporation (*Honig & Greenberg,* attorneys; *Mr. Greenberg,* on the brief).

*Larry L. Bembry,* Assistant Corporation Counsel, argued the cause of respondent City of Jersey City (*Bill Matsikoudis,* Corporation Counsel, attorney; *Mr. Bembry,* on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

This appeal concerns the liability of the Port Authority of New York and New Jersey, a bistate agency, for local property taxes, the payment of which came due after its acquisition of property in Jersey City for use in connection with its operation of the Holland Tunnel. The Port Authority acquired title on June 13, 2000. It did not file with the local assessor notice of its acquisition prior to January 10, 2001, pursuant to *N.J.S.A.* 54:4–3.3b. That section provides that when real property is acquired by the State, or a State agency, or an authority created by the State, "such property shall become tax exempt on January 1 of the calendar year next following the date of acquisition, provided that the [local] tax assessor ... is given written notice of the acquisition by certified mail on or before January 10 of said calendar year next following." Nor did the Port Authority appeal the non-exempt status of its property. *See N.J.S.A.* 54:3–21(a).

On June 21, 2001, Jersey City sold a tax title lien on the property for the balance of the taxes due in 2000 and for the first two quarters of 2001. The purchaser of the lien assigned it to Crusader Servicing Corporation (Crusader). Crusader brought a declaratory judgment action against the Port Authority and Jersey City seeking a determination of the validity of the tax assessment and tax sale. If valid, it sought an order directing the Port Authority to redeem, in default of which it could commence a

foreclosure action. If invalid, it sought a refund with interest from Jersey City.

The Law Division judge acknowledged the Port Authority's tax-exempt status, but determined that by the terms of *N.J.S.A.* 54:4–3.3b it enjoyed no exemption for the balance of 2000, and because it did not file the notice required by that section it was not entitled to exemption for 2001. The judge therefore entered judgment in Crusader's favor, determining that the taxes for 2000 and 2001 were lawfully assessed and the property was not exempt for those years. The judgment ordered the Port Authority to redeem within ninety days by paying the full amount required by the Tax Sale Law (*N.J.S.A.* 54:5–1 to –137), including 18% annual interest (*N.J.S.A.* 54:5–34).

The Port Authority appeals. It argues that the trial judge erred by failing to consider the unique tax exemption statute controlling its status as a bistate agency, and instead subjecting it to provisions in Title 54, applicable to New Jersey, its agencies and authorities it alone has created.[1] We agree that *N.J.S.A.* 54:4–3.3b is inapplicable to the Port Authority and provides no basis for withholding tax-exempt status from the Port Authority's

---

[1] The Port Authority has also raised two other arguments. It argues that the summary judgment was prematurely granted because discovery was incomplete. We reject this argument because the issues presented were purely a matter of law and no material facts were in dispute, *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995), and because the Port Authority agreed in the trial court proceedings that the case could be tried on stipulated facts and never raised the issue of incomplete discovery, *see Nieder v. Royal Indem. Ins. Co.*, 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973). The Port Authority also argues that the trial judge erred in not declaring Crusader's claim moot because, during the pendency of the litigation, in January 2004, on the recommendation of the tax assessor, the Municipal Council of Jersey City adopted a resolution canceling the 2001 taxes. The resolution did not cancel the 2000 taxes nor did it authorize cancellation of the tax sale certificate. Crusader was not on notice of and did not agree to that action and, on its objection to it, counsel for Jersey City repudiated it and argued in the litigation in support of the validity of the assessments for both years and of the tax sale certificate. Under the circumstances, and considering the public interest involved, we deem it advisable to decide the case on its merits.

property. We hold, however, that because the property was encumbered by a lien for the entire 2000 tax assessment at the time of the Port Authority's acquisition, the Port Authority took title subject to the lien and is liable for the balance of the taxes due for 2000. Because at the time of acquisition 2001 taxes had not yet been assessed and there was no lien on the property for 2001 taxes, the property was exempt for 2001 by virtue of the tax exemption statute applicable to the Port Authority. We remand for reformation of the tax sale certificate.

■ The Port Authority is an agency of the States of New York and New Jersey created by an interstate compact between the States, *N.J.S.A.* 32:1–1; N.Y. UNCONSOL. LAW Ch. 151, § 1 (2006), with the consent of the Congress of the United States, pursuant to the Interstate Compact Clause of the United States Constitution, Article I, Section 10, Clause 3. 42 Stat. 174; *see Hess v. Port Auth. Trans–Hudson Corp.*, 513 *U.S.* 30, 35, 115 *S.Ct.* 394, 398, 130 *L.Ed.*2d 245, 252 (1994). "Bistate entities, in contrast [to individual sovereign states], typically are creations of three discrete sovereigns: two States and the Federal Government." *Id.* at 40, 115 *S.Ct.* at 400, 130 *L.Ed.*2d at 255. "Compact Clause entities owe their existence to state and federal sovereigns acting cooperatively, and not to any 'one of the United States.' " *Id.* at 42, 115 *S.Ct.* at 401, 130 *L.Ed.*2d at 256. "[B]istate entities created by compact ... are not subject to the unilateral control of any one of the States that compose the federal system." *Ibid.*, 115 *S.Ct.* at 402, 130 *L.Ed.*2d at 257.

■ The Port Authority Compact, and the corresponding laws of New Jersey and New York, reflect these principles. *See, e.g., N.J.S.A.* 32:1–35.68; N.Y. UNCONSOL. LAW Ch. 152, § 19 (2006) (each requiring enactment by the other state of "legislation having an identical effect" before the provision becomes effective). We need not list the many other examples of similar provisions throughout the statutory provisions of each state governing the Port Authority. Thus it is clear that the Port Authority is not an agency of or an authority created by the State of New Jersey, and

it is not subject to *N.J.S.A.* 54:4–3.3b. Even if it could be construed that the Port Authority was an entity defined in *N.J.S.A.* 54:4–3.3b, the provision would be ineffective as to the Port Authority because New York has not enacted a concurrent law.[2]

The Port Authority derives its tax-exempt status not from Title 54 (Taxation), but from Title 32 (Interstate and Port Authorities and Commissions). *See N.J.S.A.* 32:1–1 to 32:2–37. *N.J.S.A.* 32:1–131 provides:

> The construction, maintenance and operation of vehicular bridges and tunnels within the said Port of New York District (including the said Holland tunnel and the said Midtown Hudson tunnel), are and will be in all respects for the benefit of the people of the states of New York and New Jersey, for the increase of their commerce and prosperity and for the improvement of their health and living conditions; and the port authority shall be regarded as performing an essential governmental function in undertaking the construction, maintenance and operation thereof and in carrying out the provisions of law relating thereto, and *shall be required to pay no taxes or assessments upon any of the property acquired or used by it for such purposes.*
>
> [*N.J.S.A.* 32:1–131 (emphasis added).]

New York has enacted concurrent legislation in identical form as part of its statutes governing the Port Authority. N.Y. UNCONSOL. LAW Ch. 171, § 14 (2006).

██ The Port Authority argues that the plain language of these concurrent laws exempts its property from taxation "from the moment of purchase." We do not agree. Like any purchaser, the Port Authority takes title subject to existing liens and encumbrances. When it took title on June 13, 2000, the tax levy for the entire year was already in place. Although payable in quarterly installments, *N.J.S.A.* 54:4–66a, the lien for the entire levy attaches on January 1 of the tax year. *City of E. Orange v. Palmer,* 47 *N.J.* 307, 318, 220 *A.*2d 679 (1966) (citing *N.J.S.A.* 54:5–6). In citing *N.J.S.A.* 54:5–6, the Court noted that since *L.* 1944, *c.* 247, by the express terms of that statute, the lien for the year's taxes attached on January 1 of that tax year. *Ibid.*

---

2 We leave to the wisdom of the Legislatures of both states whether to concurrently enact a notice requirement.

In its present form, as most recently amended by *L.* 1994, *c.* 32, § 5, *N.J.S.A.* 54:5–6 provides that taxes "shall be a continuous lien on the land on which they are assessed and all subsequent taxes, interest, penalties and costs of collection which thereafter fall due or accrue shall be added to and be a part of such initial lien." The amendment was enacted in response to decisions of "federal bankruptcy courts [that] have indicated that under current New Jersey law post-petition taxes do not become liens on the property." Assembly Local Government Committee Statement to Assembly, No. 936–*L.* 1994, *c.* 32; *see, e.g., In re Henry,* 173 *B.R.* 878 (Bankr.D.N.J.1993); *In re Isley,* 104 *B.R.* 673 (Bankr.D.N.J.1989). The amended version renders the lien of the new year's taxes an addition to and part of the continuous lien of the prior year's taxes rather than a newly created and perfected lien. This does not alter the fact that as of January 1 of the tax year, the lien for the entire tax levy for the year attaches.

In *Palmer,* the Court considered the effective date of tax-exempt status of property acquired by the New Jersey Highway Authority. The enabling act upon which the Highway Authority relied contained tax exemption language strikingly similar to that in the Port Authority statute. The Court quoted it at length with emphasized portions:

> "The exercise of the powers granted by this act will be in all respects for the benefit of the people of the State, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of projects by the Authority will constitute the performance of essential governmental functions, *the Authority shall not be required to pay any taxes or assessments upon any project or any property acquired or used by the Authority* under the provisions of this act or upon the income therefrom, *and every project and any property acquired or used by the Authority* under the provisions of this act and the income therefrom, and the bonds or notes issued under the provisions of this act, their transfer and the income therefrom (including any profit made on the sale thereof) *shall be exempt from taxation.*"
>
> [*Palmer, supra,* 47 *N.J.* at 314–15, 220 *A.*2d 679, quoting *N.J.S.A.* 27:12B–16 (repealed 2003).]

The Court rejected the Highway Authority's argument that the statute's plain language left no doubt that its property was exempt

from the moment of acquisition. Indeed, such a literal reading would prove too much, for it "would seem to require a cancellation of tax liens for prior years on property it acquired." *Id.* at 316, 220 *A.*2d 679. Instead, the Court gleaned the intent as to the effective date "from the fundamentals of New Jersey's property tax and local government finance system." *Id.* at 317, 220 *A.*2d 679.

Except for the assessment date of October 1 of the pretax year, all events in the levy and payment process take place within the tax year. In addition to the municipality, many other levels of government levy taxes on real property. But the municipality is the collecting and distributing agent for the benefit of all taxing entities. One tax bill is rendered. The municipality's tax rate is set by the county board of taxation. Each entity entitled to raise revenue in the municipality certifies to the board the amount it needs to raise for its operations that year. By January 10 of the tax year, the municipal assessors deliver their lists valuing each parcel, which are reviewed, corrected and equalized, ultimately yielding the municipality's tax rate. *Id.* at 317–18, 220 *A.*2d 679.

The Court reasoned:

> The tight relation between the raising of necessary governmental revenues and the taxable properties on the rolls is most obvious from this panoramic view of the New Jersey system. The annual finances of each taxing entity sharing in the municipal levy are dependent upon tax revenues computed on the basis of the taxable real property on the assessor's list. Mid-year cancellation of tax liability by reason of a property so listed becoming exempt during the year would result ... in a major dislocation and an unfair burden to the remaining taxpayers of the municipality, for the tax revenues lost thereby to the municipality itself must be made up in the end by those taxpayers.
>
> [*Id.* at 318–19, 220 *A.*2d 679.]

The Court therefore declined to "attribute to the Legislature the intention to bring about such an inequitable result or impose such a burden on the taxpayers of the locality where the acquired property is situate, absent specific enactment so requiring." *Id.* at 320, 220 *A.*2d 679. The tax exemption language in the Highway Authority statute was not deemed a sufficient "specific enactment"

to overcome the result intended and implied by the Legislature, namely that the taxes for the current year remain due.

Applying the same reasoning to the nearly identical language in the Port Authority tax exemption statute, we reach the same result. We are mindful, of course, of the distinction between the Port Authority's bistate authority status and the Highway Authority's status as an authority created by the State of New Jersey. The distinction is not dispositive. The lien of the 2000 taxes, in their entirety, was already in existence when title passed to the Port Authority, and it took title subject to the lien. Further, the rationale underlying the *Palmer* holding did not rely upon the Highway Authority's status as a State entity. The Court adverted to cases involving mid-year acquisitions by the federal government in which local taxes for the balance of the year were required to be paid. *Id.* at 319–26, 220 *A.*2d 679.

We are satisfied that our conclusion does not run afoul of the prohibition of one state exercising unilateral control over a bistate agency. The tax exemption provision pertaining to the Port Authority in the concurrent laws enacted by New Jersey and New York does not expressly establish the effective date of the exempt status. No interpretive decision of a New York court has been brought to our attention and we have found none in our independent research. If a persuasive contrary decision of our sister state existed, we might defer to it as a matter of comity. The reasons underpinning our interpretation apply with equal force to a New York municipality in which a mid-year acquisition is made.

■ The reasons underlying our conclusion that the balance of the 2000 taxes remain payable do not apply to 2001. And, as we have explained, the notice requirement of *N.J.S.A.* 54:4–3.3b does not apply to the Port Authority. Nor are we persuaded by the argument that the Port Authority had an obligation to appeal its lack of exemption for 2001. The exemption for 2001 was statutorily mandated by the concurrent laws of New Jersey and New York pertaining to the compact and was not subject to unilateral control by New Jersey.

The consequence of our determination is the existence of a tax sale certificate based upon some taxes that were validly assessed and some that were not. Determination of the appropriate remedy is guided by a provision in the Tax Sale Law:

*If the assessment itself is valid* and the tax, assessment or other municipal charge, *or any part thereof, is justly due,* no sale shall be set aside, except on condition that the amount due shall be paid to the municipality for the use of the holder of the certificate of sale by the person applying to set it aside. If the sale shall be set aside, the municipality shall refund to the purchaser the price paid by him on the sale, with lawful interest, upon his assigning to the municipality the certificate of sale and all his interest in the tax, assessment or other charges and in the municipal lien therefor, and the municipality may readvertise and sell if the municipal lien remains in force.

[*N.J.S.A.* 54:5–43 (emphasis added).]

The certificate should be reformed to remove the charges attributable to 2001 taxes, the assessment of which was invalid. On that portion, Crusader is entitled to a refund from Jersey City of the principal amount of the taxes plus "lawful interest," namely that allowed by *Rule* 4:42–11(a). *Brinkley v. W. World, Inc.,* 281 *N.J.Super.* 124, 133, 656 *A.*2d 872 (Ch.Div.1995), *aff'd and modified,* 292 *N.J.Super.* 134, 678 *A.*2d 330 (App.Div.1996); *Simon v. Twp. of Voorhees,* 289 *N.J.Super.* 116, 120 n. 1, 672 *A.*2d 1292 (App.Div.), *certif. denied,* 145 *N.J.* 373, 678 *A.*2d 714 (1996); *Tontodonati v. City of Paterson,* 229 *N.J.Super.* 475, 485, 551 *A.*2d 1046 (App.Div.), *certif. denied,* 117 *N.J.* 35, 563 *A.*2d 808 (1989); *Pioneer Gun Club v. Twp. of Bass River,* 61 *N.J.Super.* 104, 108–09, 160 *A.*2d 183 (Ch.Div.1960). The 2000 taxes, on the other hand, were properly assessed and are justly due. To that extent, the certificate and sale remain valid and shall not be set aside. The Port Authority may redeem the reformed certificate in accordance with the Tax Sale Law. If it fails to do so, Crusader may pursue such forms of relief as allowed by law. *See First Nat'l Bank of Chi. v. Bridgeton Mun. Port Auth.,* 338 *N.J.Super.* 324, 328–29, 768 *A.*2d 1066 (App.Div.), *certif. denied,* 168 *N.J.* 295, 773 *A.*2d 1158 (2001).

We remand for entry of an appropriate order and for such further proceedings as may be appropriate and necessary.

Affirmed in part; reversed and remanded in part.