HOPKINS, J.T.C.
These are appeals for the years 1980 and 1981 brought by Overlook Hospital Association (Hospital) in which it asserts its right to an exemption from taxation of a multi-tiered parking garage located on Block 43, Lot 11 in the City of Summit (City).
The issues involved are: (1) whether Hospital was required to pay the local property taxes prior to its appeal from the revocation and denial of its exemption; (2) whether Hospital timely filed its appeal to the county board upon learning of the omitted assessment for 1980; and (3) assuming the matter is properly before this court, whether a parking garage constructed by *92 Hospital is exempt from local property tax pursuant to N.J.S.A. 54:4-3.6. Both parties filed motions for summary judgment.
The essential facts are not in dispute. Hospital is a nonprofit New Jersey corporation organized for hospital purposes. It is presently located in City and serves an area with a population of approximately 350,000. It presently has 541 beds and 48 bassinets. It has in excess of 2,000 employees, a medical staff of approximately 345 admitting physicians, and approximately 2,000 volunteers. It had 20,715 discharges in 1980 and in that year there were more than 75,000 outpatient visits to Hospital.
On May 15, 1973 Hospital filed an application with the State Department of Health, pursuant to the provisions of the 1971 Health Care Facilities Planning Act (the Act), N.J.S.A. 26:2H-1, et seq. and 2H-8, requesting permission to construct a parking garage on the hospital grounds. At that time, Hospital had 680 parking spaces. They were insufficient and resulted in parking problems in the area.
The Health Care Facilities Planning Act established the public policy of the State of New Jersey as follows:
... [T]hat hospital and related health care services of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost are of vital concern to the public health. [N.J.S.A. 26:2H-1]
N.J.A.C. 8:43E-1.9, in implementing the act, provided as follows:
Guidelines regarding costs of parking garagesf:]
(a) Applications for a certificate of need to purchase, construct, modernize, renovate or expand a parking garage should provide full written documentation of the purchase, construction and operational costs of the proposed unit, including land acquisition and building demolition related thereto. The applicant should include both direct and indirect costs. In addition, costs related to the remodeling or renovation thereof should be included. Projections of anticipated revenues during the first two years of operation should be supplied with the certificate of need application.
(b) To the greatest extent possible, the costs of purchase, construction, renovation, expansion and operation of the proposed parking garage should be fully underwritten by charges to users. To the greatest extent possible, the costs should not be financed, directly or indirectly, in whole or in part by charges to patients.
On November 2, 1973, Hospital received the necessary certificate of need permitting it to proceed with the construction of *93 the parking garage. It was constructed on property which had previously been granted a local property tax exemption because it was utilized by Hospital. The garage was completed in May 1980. Shortly thereafter, the assessor concluded that the garage was being conducted as a business and effectively revoked the exemption by implementing an omitted assessment for the period commencing June 1, 1980. Hospital became aware of the assessment on its receipt of a tax bill from City’s tax collector and filed an appeal prior to December 1, 1980 with the Union County Board of Taxation. Further, on October 31,1980, Hospital filed a request for exemption for the tax year 1981. This latter request was denied. On appeal to the county board the actions of the assessor were sustained for both years. These appeals followed.
The garage is a multi-tiered parking facility containing 525 parking spaces located in close proximity to the main hospital building. Access is controlled by mechanical gates which are activated when a parking patron removes a ticket from a dispenser at the gate. Access may also be gained by employees having specially issued plastic cards. It is managed by Summit Parking Corporation (Summit), a subsidiary of Edison Parking Corporation (Edison), pursuant to an agreement between Edison and Hospital, dated April 23, 1980. That decision was made based upon Hospital’s prior experience in managing a pay-parking operation. It concluded that it would be more efficient and less costly for the hospital to retain an independent contractor to manage the garage. Summit is paid a monthly management fee and is also reimbursed for all expenses incurred in connection with the management of the garage. Summit prepares a monthly statement detailing the financial aspects of the garage operation. Any profits from the garage operation would be used for the operation of the hospital.
The garage is used by a variety of persons having legitimate connections with the hospital, including employees, visitors, outpatients, volunteers, radiology students and inpatients. The charge is 50<t an hour with a maximum daily charge of $2.50. The location of the garage makes it highly unlikely that it will *94 be used in competition with garages serving the business district of City.
The financial statement for the first IV2 years of operation, as prepared by Hospital, shows that the garage was operating at a loss. The loss figures were primarily due to depreciation, based on a building life of 33 years, and a deduction for interest paid on the mortgage. City, utilizing a financial analysis prepared by a certified public accountant, alleges that if depreciation was based on a longer life and if the interest paid were not considered, Hospital would show an annual profit of $65,075 since 38.6% of the parking spaces were being utilized by Hospital personnel without charge. If a charge were made to all Hospital personnel, the financial analysis shows a potential profit of $137,430 per annum. These financial projections contained an unsupported $1,000,000 reduction in the construction cost based on an assumed success in pending litigation. Also, the local property tax which would have to be paid if the garage were not exempt was not shown.
City passed an ordinance, effective January 1979, which required all new hospital construction to have 1 parking space for every bed, V2 parking space for every daytime employee, and V2 parking space for every medical staff member.
City’s first procedural contention is that Hospital cannot obtain a judicial determination of the issue because it failed to pay the disputed taxes as required by N.J.S.A. 54:3-27 and :2-39. The former statute requires a taxpayer to pay the first three quarters of taxes assessed against it for the current year in order to file an appeal with the county board. N.J.S.A. 54:2-39 requires that all taxes then due for the year for which review is sought must be paid at the time a complaint has been filed with the Tax Court. However, N.J.S.A. 54:3-27.3 specifically precludes the application of both N.J.S.A. 54:3-27 and :2-39 in proceedings where the issue is whether the property qualifies as exempt property. Accordingly, as that is the issue here, Hospital did not have to pay any taxes prior to its appeals.
*95 City’s second procedural contention is that Hospital did not file a timely appeal of the 1980 assessment. It relies upon N.J.S.A. 54:3-21 which sets an August 15 deadline for county board appeals. The facts show that the 1980 assessment was made pursuant to N.J.S.A. 54:4-63.26, which permits an assessment as omitted property when a property’s right to exemption ceases by reason of a change in use. N.J.S.A. 54:4-63.29 directs that the added assessment procedures shall be applicable to those omitted assessments. As the 1980 assessment was effected under the aforesaid statutory authority as of June 1, 1980, the period of appeal to the county board did not expire until December 1, 1980. N.J.S.A. 54:4-63.11. This appeal was filed prior to that deadline. While City contends that the deadline should only be applicable when the issue is one of value rather than exemption, the statutes contain no such limitation and City does not cite any authority in support of that contention.
The basic issue is whether the subject garage is exempt from taxation pursuant to the provisions of N.J.S.A. 54:4-3.6, which provides in pertinent part as follows:
The following property shall be exempt from taxation under this chapter: ... all buildings actually and exclusively used in the work of associations and corporations organized exclusively for ... hospital purposes....
The phrase “actually and exclusively used” was construed in Princeton Tp. v. Ten Acre Foundation, 69 N.J.Super. 559, 174 A.2d 601 (App.Div.1961) as that which is reasonably necessary for the efficient functioning of the hospital. This interpretation was reasserted in Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 351 A.2d 756 (App.Div.1976), aff’d. 73 N.J. 179, 373 A.2d 651 (1977).
The conclusion reached through an application of this test necessarily depends upon the facts relating to each individual property. In the subject case, the garage was constructed only after Hospital was able to convince the State Department of Health that it was necessary to alleviate unfavorable parking conditions at and around the hospital. Further, it is being used in conjunction with the hospital operation because parking, not only of employees and medical staff but also of visitors so *96 necessary to the wellbeing of friends and relatives who are confined to the hospital, is permitted. Except for the fact that there are charges for the parking privilege, the case would be no different from Congregation B’Nai Yisroel v. Millburn Tp., 35 N.J.Super. 67, 113 A.2d 182 (App.Div.1955), where a parking lot owned by a synagogue and used by its members was held to be exempt under the identical statute. The facts in that case are similar to this as, in both situations, the municipalities passed ordinances requiring off-street parking for new construction. In the subject case, the garage spaces permitted a voluntary partial compliance with the new parking ordinance.
City’s contention that the garage is or can be a profitable venture has no merit. If Hospital was required to pay local property taxes, the garage’s present use would not produce a profit even under City’s theory. City’s suggestion that Hospital charge employees for the parking privilege is equally meritless, since that is a hospital management decision with which City cannot be concerned. Even if Hospital followed City’s suggestion, the return on investment would be less than 3% and, accordingly, economically unfeasible.
The above findings lead to the conclusion that the garage was not being operated as a commercial venture, and further, that even if there were or could be a profit realized from the parking charges, that profit was or would be utilized in the total hospital budget. As stated in Boys Club of Clifton v. Jefferson Tp., 72 N.J. 389, 403-404, 371 A.2d 22 (1977), even when an exempt organization realizes a profit, the tax exempt status of the organization will not be lost if the profit is used to carry out the exempt purposes and policies of the organization. It should also be noted that the certificate of need permitting the construction was issued under regulations which required the costs to be underwritten to the greatest extent possible by charges to users, so as not to increase medical costs.
I find that the garage was reasonably necessary to the operation of the hospital. This finding is consistent with that of courts in other jurisdictions which have also held that parking *97 lots operated by hospitals which charge for parking, are reasonably necessary to the hospital operation. Maine Medical Center v. Lucci, 317 A.2d 1 (Me.Sup.Ct.1974); Bowers v. Akron City Hospital, 16 Ohio St.2d 94, 243 N.E.2d 95 (Sup.Ct.1968); Ellis Hospital v. Fredette, 27 App.Div.2d 390, 279 N.Y.S.2d 925 (App. Div.1967). As stated in Maine Medical Center v. Lucci, supra, “[w]e would be completely naive if we ignored the practical problems of a large medical center absent adequate areas for vehicular parking.” 317 A.2d at 2.
The Clerk will enter a judgment exempting Block 43, Lot 11 from local property taxes for the years 1980 and 1981.