MENYUK, J.T.C.
This is the court’s decision on plaintiffs motion, which is styled as a motion to enter judgment, but which actually seeks an order directing the defendant to refund to it amounts overpaid as taxes, together with interest and counsel fees. Following the initial oral argument on the motion, the court directed an evidentiary hearing, and post-trial briefs.
I find the following facts. These matters were originally brought as appeals of the local property tax assessments for tax years 2002 through 2006. Each appeal included five adjacent tax parcels.
By way of background, the subject property had been designated as a federal Superfund site. During the years in issue here, a remediation plan was in the process of being prepared and approved by the Environmental Protection Administration. The total costs of remediation had yet to be fully determined, leading to substantial delays in the preparation of appraisal reports and the scheduling of trial. On February 26, 2007, the day that these matters were finally scheduled for trial, the parties entered into settlements that were placed on the record. Judgments were issued by the Tax Court[2] in accordance with that settlement as follows:
Assessment as Original Total Adjusted by Docket No. Date of Judgment Assessment Judgment
Complaint 004162-2002 March 30,2007 $2,083,500 withdrawn
005609-2003 April 13, 2007 $1,333,500 $25,000
*124 006452-2004 April 13, 2007_$1,333,500_$25,000
004707-2005 March 16, 2007 $1,333,500_$25,000
004513-2006 March 23,2007 $1,333,500 $25,000
As part of the settlement, plaintiff agreed that a standard clause would be included in the judgments whereby plaintiff would waive the payment of interest on the refund of taxes that would otherwise be due it under N.J.S.A. 54:3-27.2, provided that it received its refund within sixty days of entry of the Tax Court’s judgment. That clause was included in each judgment, except the judgment for 2002, for which no refund was due.
It is undisputed that the settlement would have resulted in a tax refund of $207,135.55 had plaintiff paid its taxes in full for all years under appeal. Plaintiff did not, however, pay any taxes for tax year 2006. It contends that there was an agreement that the assessment would be lowered for 2006, and an understanding that no taxes needed to be paid for tax year 2006, because both parties recognized that there would be a substantial reduction and refund due the plaintiff.
Although the plaintiff concedes that it is not due a refund for tax year 2006 because it did not pay any taxes for that year, it contends that it is due a refund of $149,122.95, calculated as follows:
$207,135.55 (total refund amount for tax years 2003 through 2006)
less $ 56,396.35 (taxes billed for 2006 but not paid)
less $ 1,077.50 (taxes actually due for 2006, after adjustment of assessment)
less $ 538.75 (estimated first half taxes for 2007)
The defendant contends that there was no agreement to reduce the taxes for tax year 2006 prior to the settlement of the appeal for that year, that plaintiff was required to pay taxes for 2006, and, because plaintiff did not, the municipal tax collector was compelled to put the subject property on the tax sale list. The tax sale took place on June 22, 2006, and a tax sale certificate on Block 256, Lot 1, was issued to a third party. There was no bidder on the remaining four tax lots under appeal, and tax sale certificates were issued to the municipality for those lots. At oral argument *125 on the motion, plaintiffs counsel denied that plaintiff had ever received notice of the tax sale. I directed an evidentiary hearing on the issues of whether there had been an agreement as to payment of the 2006 taxes and whether plaintiff had been given notice of the tax sale.
Following oral argument and prior to the hearing, defendant issued a check to plaintiff on April 4, 2008, in the amount of $96,778.70 to be held in escrow by plaintiffs counsel. Defendant contends that is the only refund due to the plaintiff, after deduction for (1) amounts due the third party holder of the tax sale certificate on Block 256, Lot 1; (2) amounts due the municipality on the tax sale certificates held by it; (3) various fees, penalties and interest due in order to redeem the tax sale certificates; and (4) taxes and sewer charges for 2007.
Plaintiffs original motion was supported by the certification of plaintiffs counsel to which were appended the two letters that plaintiff relies upon as evidence of an agreement that plaintiff would not be required to pay 2006 taxes. The first, dated February 3, 2006, is a letter from plaintiffs counsel to defendant’s former counsel, Patrick Diegnan, stating:
In light of our conversation with Judge Menyuk, I await confirmation from you that the Borough -will reduce the assessment for 2006 and thereby abate the taxes. I have already advised my client of this and therefore I believe it is his intention not to pay taxes commencing with the first quarter of 2006.
Please let me know if this poses a problem. If so, I may need to make contact with the Court to accelerate the trial date. However, it appeared from our conversation that it would not pose a problem, but I need confirmation.
The second letter, dated February 24, 2006, from Mr. Diegnan to plaintiffs counsel stated:
Enclosed please find a self-explanatory explanation from Tax Assessor Gary Toth. As we discussed in Court there will be no resolution of the pending tax appeal, however the assessor has agreed to reduce the total assessment of the subject property to $500,000.00 and all future tax obligations will be based on that amount. Accordingly your client will have some continuing tax obligation.
[emphasis added].
The enclosure prepared by the tax assessor indicated that taxes in the amount of $22,412.09 had already been billed for the first two quarters of 2006, that no payment had been received, and that interest of $108.91 had accrued on unpaid 2006 taxes.
*126 Plaintiffs only witness at the hearing was Lara Corad Basile, plaintiffs property manager. She is responsible for the payment of property taxes. When asked why she did not pay the taxes for tax year 2006, she testified that she thought there would be a downward adjustment while a settlement was being negotiated. She was also asked whether she had received a copy of the letter from plaintiffs former counsel and if she had responded in any way. She testified that she was aware of the letter, and was aware of settlement discussions between the defendant and plaintiff, although it is not clear that she had actually seen the letter prior to the hearing or that she had personally taken part in the discussions with the municipality regarding settlement. It was her testimony that it was her feeling that plaintiff did not have to pay 2006 taxes. She acknowledged receiving notice of the tax delinquency and the tax sale on the subject property, but testified that she filed the notices away, took no further action regarding the notices, and did not ask anyone to stop the tax sales.
Although he did not indicate who initiated the call, the defendant’s tax collector, Richard Lorentzen, testified that he had spoken with Ms. Coraci Basile after the notice of tax sale went out. Mr. Lorentzen stated that she told him at that time that the defendant had agreed to lower the taxes for tax year 2006. He testified that he had told her that whatever the agreement might have been, that there had been no reduction in the assessments for 2006 at the time that the assessment list was filed in January 2006, see N.J.S.A. 54:4-35, that the taxes based on those assessments were delinquent and, unless paid, the tax sale would go forward.
Plaintiff contends that defendant is estopped from charging interest and other costs associated with the sale of the tax sale certificates based on a representation by the municipality that plaintiff could suspend payment of 2006 local property tax assessments while the tax appeals were pending. I conclude that plaintiff had no reasonable basis to believe that it was not required to pay taxes for tax year 2006 while the tax appeals were still pending.
*127 First, it is well settled that estoppel is rarely invoked against public entities, particularly in matters of taxation. See Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J.Tax 338, 354-355 (1995), and cases cited therein. “Estoppel has not barred the imposition of a tax which a governmental representative has verbally indicated by words or writing is not applicable or would be imposed differently than eventually assessed.” Id. at 355. In Black Whale, the court determined that the Director of the Division of Taxation was not bound by the unauthorized act of an investigator who represented to a taxpayer that the purchase of a boat was not subject to tax. Id. at 356.
Defendant presumably had the statutory authority to enter into an agreement to suspend the payment of taxes until the tax appeals were resolved. See N.J.S.A. 54:4-99 (authorizing a municipal governing body to abate, revise, alter, adjust and settle past due taxes, both principal and interest, “as it shall deem equitable and just and be for the best interests of the municipality.”). However, there is no evidence that defendant’s governing body authorized any agreement for the suspension of tax payments, and as correctly asserted by the defendant, it is not bound by any unauthorized agreement that might have been made by its attorney. City of Jersey City v. Roosevelt Stadium, Marina, Inc., 210 N.J.Super. 315, 327, 509 A.2d 808 (App.Div.1986); Sumo Property Mgmt., LLC v. City of Newark, 21 N.J.Tax 522, 527 (2004).
Moreover, Mr. Diegnan’s letter of February 24, 2006, cannot sensibly be understood to have provided the reassurance that plaintiffs counsel was seeking in her letter of February 3, 2006. Mr. Diegnan stated that future tax obligations would be reduced (but not entirely eliminated) pending resolution of the appeals, and enclosed the printout from the municipal tax assessor indicating that 2006 taxes had already been assessed and were due. Plaintiff was aware that the assessment for 2006 had already been made and had filed an appeal of that assessment following the correspondence between plaintiffs counsel and defendant’s former counsel.
*128 The letter from Mr. Diegnan was the only evidence produced by plaintiff of any agreement between the defendant and the plaintiff regarding payment of taxes.[3] I, therefore, conclude that there was no agreement permitting plaintiff to suspend payment of the 2006 taxes until the appeals were concluded, and that plaintiff could not reasonably have understood Mr. Diegnan’s letter to be such an agreement.
In the absence of any agreement, taxpayers are required to pay at least the first quarter taxes in order to appeal the assessment for that tax year. N.J.S.A. 54:3-27.[4] Whether or not the municipality seeks to enforce that requirement by way of a motion to dismiss the tax appeal, unpaid taxes nevertheless become a lien on the property. N.J.S.A 54:5-6. There is no exception in the statutory plan of enforcement of tax liens for those taxpayers who are in the process of appealing their assessments. The remedy provided for a taxpayer who pays property taxes during the *129 pendency of a tax appeal and who ultimately succeeds on that appeal is a refund of overpaid taxes, with interest at a rate provided by statute. N.J.S.A. 54:3-27.2. The tax collector is obliged to place properties with outstanding tax liens on the tax sale list. N.J.S.A. 54:5-19.
In its post-hearing brief, plaintiff raised for the first time the alternative contention that the tax sale certificates here were void ab initio because the assessment amount for 2006 that was ultimately agreed to by the parties in their settlement of this matter was significantly less than the original assessment. Plaintiff points to Mr. Diegnan’s letter of February 24, 2006 as evidence of the fact that defendant recognized by the beginning of 2006 that there would ultimately be a significant reduction. Plaintiff cites Brinkley v. Western World, Inc., 275 N.J.Super. 605, 611, 646 A.2d 1136 (Ch.Div.1994), aff'd as modified, 292 N.J.Super. 134, 678 A.2d 330 (App.Div.1996), for the proposition that courts may set aside a tax sale certificate if inequity would result or if the tax assessment is void ab initio.
Brinkley was an action to foreclose on tax sale certificates that had been sold to the plaintiff while there was a pending tax appeal contesting the denial of assessment as farmland. That tax appeal ultimately resulted in a ruling that the property owner was entitled to farmland assessment. See Byram Twp. v. Western, World, Inc., 111 N.J. 222, 544 A.2d 37 (1988). As a consequence of the ruling, the tax collector credited an overpayment of taxes pursuant to N.J.S.A. 54:4-134,[5] which permits a municipality to credit delinquent taxes and other municipal charges against a tax refund due to the taxpayer following a successful tax appeal. Brinkley, supra, 275 N.J.Super. at 608, 646 A.2d 1136. The court concluded that the lien had been “extinguished” when the tax refund was offset against the delinquent property taxes, and invoked its equitable powers to set aside the tax sale certificate. Id. at 611, 646 A.2d 1136.
*130 In reaching that conclusion, the court relied on decisions holding that tax sale certificates issued on property ultimately determined to have had no tax liability were void ab initio. See, e.g. Nordell v. Township of Mantua, 45 N.J.Super. 253, 132 A.2d 39 (Ch.Div.l957)(duplicate assessments on same lot where tax had actually been paid by one of the listed owners); Hudson County Park Commission v. Town of Kearney, 132 N.J.L. 287, 40 A.2d 201 (Sup.Ct.l944)(property exempt as public property used for public purposes). In a footnote, the court cited a decision of this court. In its entirety, the footnote states:
The municipality also argues that the lien was valid at the time it was sold because defendants did not pay taxes pursuant to N.J.S.A. 54:3-27. Case law is clear that if a tax certificate is sold and it is later determined on appeal that the property owner was exempt from payment of taxes, the tax sale certificate is void. Overlook Hospital Assoc, v. Summit, 6 N.J.Tax 90 (1983), affid o.b., 6 N.J.Tax 350 (App.Div.1984). If the tax certificate is void, foreclosure may be an improper remedy. The Court recognizes that Overlook may be distinguished because that property was absolutely exempt from taxation. However, assuming that the sale was valid at the time it occurred, the lien and subsequent tax certificate ... have been “extinguished.” As such the court may invoke its equitable powers to set the sale aside and avoid a forfeiture.
[Brinkley, supra, 275 N.J.Super. at 612 n. 4, 646 A.2d 1136]
Overlook was an appeal of a denial of an exemption on a parking garage associated with a hospital. In addition to the primary issue of entitlement to exemption, the court also considered whether the complaint should be dismissed because the hospital had failed to pay taxes as required by N.J.S.A. 54:3-27. The court concluded that by virtue of the provisions of N.J.S.A. 54:3-27.3, now codified at N.J.S.A 54:51A-3, the hospital was not required to pay taxes as a condition of a tax appeal. The ease did not implicate a tax sale certificate or any question regarding the validity of a tax sale certificate, or the validity of any tax lien on the subject property prior to the issuance of the judgment declaring the property to be exempt. Notwithstanding its affirmance by the Appellate Division in Brinkley v. Western World, 292 N.J.Super. 134, 136, 678 A.2d 330 (App.Div.1996), the reasoning of the trial court in Brinkley, particularly as reflected in footnote 4, is troubling. To the extent that Brinkley can be read as authority for the proposition that a tax sale certificate and the tax lien on which it is based is void ab initio when a judgment is subsequent *131 ly entered reducing the assessment (as opposed to declaring a property to be exempt) and, consequently, retrospectively reducing the tax lien that was the basis of the tax sale, it is inconsistent with the statutory design for the collection of taxes and enforcement of tax liens. As noted in Simon v. Township of Voorhees, 289 N.J.Super. 116, 122, 672 A.2d 1292 (App.Div.1996), “[o]ur case law underscores the distinction between illegal and ‘invalid’ assessments on the one hand, and ‘overassessments,’ on the other.”
As suggested in Brinkley, supra, 275 N.J.Super. at 611, 646 A.2d 1136, when an eventual judgment issued at the conclusion of a tax appeal has the effect of substantially reducing or eliminating the tax liability for which the tax sale certificate was sold, a more appropriate remedy (outside the context of a foreclosure action) would be for the municipality to acquire the tax sale certificate from the certificate holder with the proceeds of the tax overpayment.
In any event, this is not an action in foreclosure or an action to void a tax sale certificate. This was brought as a motion to compel the defendant to pay the amounts due it pursuant to N.J.S.A. 54:3-27.2 as a consequence of the judgments issued by this court reducing the assessments. Notably, unlike the property owners in Brinkley, id. at 607, 646 A.2d 1136, plaintiff here never contested the original tax sale. Ms. Coraci Basile conceded that she had notice of the tax sale but did nothing to stop it. This court has the power to effectuate its decisions, orders and judgments, N.J.S.A. 2B:13-2d, and “in all causes within its jurisdiction, and subject to law [to] grant legal and equitable relief so that all matters in controversy between the parties may be completely determined.” N.J.S.A 2B:13-3a. Consequently, this court will proceed to determine whether plaintiff is entitled to the relief it sought in its notice of motion.
Ms. Coraci Basile testified that it is one of her duties to make sure that plaintiff receives refunds it is due as a result of local property tax appeals and to make sure that the refunds are in the correct amount. Following entry of the judgments in these matters, Ms. Coraci Basile prepared a spreadsheet setting forth *132 her calculations as to the amounts due. As noted above, her calculations indicated that plaintiff was entitled to a refund of $149,122.95.
Ms. Coraci Basile testified that she expected to receive a check for the refund due plaintiff as a result of the settlement within a “couple of months” of the date that judgments were entered. When she did not receive a check, she contacted Mr. Lorentzen, defendant’s tax collector, to inquire when plaintiff would receive its refund. She testified that Mr. Lorentzen advised her that she and he would have to agree upon the amount of the refund due the plaintiff before the defendant would issue a check. According to Ms. Coraci Basile, Mr. Lorentzen provided her with his computations of the refund amount, but she did not understand why he had deducted interest and other charges from the refund amount due to plaintiff. She testified that he had advised her that the defendant had sold tax sale certificates on the unpaid 2006 taxes, which would have to be satisfied before any refunds could be authorized and also sent her more detailed backup for his calculations. She testified that she could not agree that any interest was due from the plaintiff. Following a conversation in June 2007, when it was clear that she and Mr. Lorentzen could not agree upon the amount due as a refund to plaintiff, she contacted plaintiffs attorney who subsequently made the motion that is currently before the court. Ms. Coraci Basile testified that she did not make any further requests for a refund cheek following her June conversation with the tax collector.
The defendant’s only witness at the hearing was its tax collector, Mr. Lorentzen. He testified that the defendant is a fiscal year town, presumably meaning that it operates on the State fiscal year, July 1 to June 30. See N.J.S.A. 40A:4-3.2. Consequently, tax sale notices for tax year 2006 went out after the grace period expired in May 2006. See N.J.S.A. 54:5-19, -21, -25, -26, -27. Mr. Lorentzen testified that, generally, he does the computations for refunds resulting from a tax appeal within a week after he receives the judgment. In this ease, he testified that he actually received the judgments for tax years 2003 and 2004 on April 13, 2007 and received the judgments for tax years 2005 and 2006 *133 shortly thereafter, even though the latter two were issued first. After he does the computations, he gives his work to his staff to process so that a tax refund can be presented to the Borough Council for approval in the form of a resolution authorizing a check for the refund to be issued. Mr. Lorentzen testified that the Council meets every two weeks so that the refund process is generally quite prompt.
Mr. Lorentzen stated that he was contacted by Ms. Coraci Basile in May 2007, and that he had discussions with her in May and June 2007 regarding the amount of the refund due to plaintiff, and explained to her that the lienholders had to be paid back and that the amount of the liens had to be subtracted from the refund that would otherwise be due to the plaintiff. It was Mr. Lorentzen’s testimony that Ms. Coraci Basile told him that she did not want any part of the refund due plaintiff until the parties agreed on the amount due. Ms. Coraci Basile testified that she did not recall using those words. Having listened to the testimony of both witnesses, having observed their demeanor and having considered the substance of the testimony in its entirety, I find Mr. Lorentzen’s version of the conversation to be more credible.
Three separate sets of calculations made by Mr. Lorentzen were in evidence. The first set had a fax cover sheet indicating that the calculations had been faxed to Ms. Coraci Basile on June 13, 2007. The cover sheet stated: “Attached is the math for the State Tax appeals and the refund amount ($104,229.47). The liens were created due to unpaid taxes. The liens need to be satisfied before any refunds can be authorized. Once we agree on this figure we can process a resolution.” The calculations were done on a two-page document entitled “Appeal Calculation Sheet” dated June 13, 2007, and showed that the plaintiff was due a total refund of $207,135.55 for the five tax lots under appeal (the same amount calculated by Ms. Coraci Basile), less deductions for the four quarterly installments of 2007 taxes in the total amount of $1,140, with a net refund of $205,955.55 due the plaintiff before deductions for the tax liens. At the bottom of the last page of these calculations was noted the following: “There are assorted liens on all of these parcels. The total of all liens is $101,766.08. Bulk of *134 liens owed to outside lien holder in the amount of $89,548.16. Borough is owed $12,217.92. Calc date for liens is 6-11-07. Amount owed to DSC after liens paid $104,229.47.”
The two-page appeal calculation sheet was followed by five pages of computer printouts, one for each tax lot that had been appealed. These five pages were each entitled “Lien Redemption Work Sheet.” The first four sheets were for the four lots for which the defendant had purchased the tax sale certificates at the June 2006 tax sale. The fifth sheet was for the lot for which the third party lienholder had purchased the tax sale certificate. In addition to the 2006 taxes due at the time of the tax sale, together with interest accrued up to the date of sale, see N.J.S.A. 54:4-67(a), and costs of the sale, all of which are municipal liens, N.J.S.A. 54:5-6, which may be enforced by the selling of a tax sale certificate, N.J.S.A. 54:5-19, Mr. Lorentzen also included in the amounts due with respect to each tax lot interest accrued subsequent to the tax sale, a redemption penalty, recording fees and a fee for canceling the tax sale certificate. For the lot on which the lien was held by the third party, Mr. Lorentzen also deducted: (1) an end of the year penalty for a delinquency in excess of $10,000 for tax year 2006 pursuant to N.J.S.A. 54:4-67; (2) property taxes and interest for what appears to be either the first two or three quarters of 2007 (calculated on the basis of the assessment prior to entry of the judgment); and (3) sewer charges and interest for the first two quarters of 2007.
The second set of Mr. Lorentzen’s calculations had a fax cover sheet dated June 14, 2007, but the appeal calculation sheets appended to it were dated August 20, 2007. This set of calculations again indicated that $207,135.55 would be due the plaintiff, had all taxes been paid for the years under appeal. From that amount was subtracted $1098.25 for 2007 taxes,[6] leaving a refund amount of $206,037.30. The appeal calculation sheet concluded with the following: “There are assorted liens on all of these parcels. The total of all liens is: $89,068.72. Bulk of liens owned *135 to outside lien holder in the amount of $76,850.80. Borough is owed $12,217.92. Calc date for liens is 6-11-07. Amount owed to DSC after liens paid $116,968.58.”
Significantly, the second set of calculations indicates that there is a larger refund due plaintiff than the first set of calculations ($116,968.58 as opposed to $104,229.47). Mr. Lorentzen believed the difference was attributable to the fact that the lienholder had determined not to pay taxes and other municipal charges that had become due subsequent to the tax sale. However, there were no detailed lien redemption sheets appended to the second set of calculations, so it was impossible to determine exactly how the amounts due on any of the parcels, including the one parcel for which the third party held the tax sale certificate, had been calculated.
Finally, the third set of Mr. Lorentzen’s calculations of the refund amount due the plaintiff was dated April 3, 2008, and calculated the amounts due the third party lienholder as of August 7, 2007, which Mr. Lorentzen testified was the date on which the defendant paid off the third party lienholder. This set of calculations concluded that the total of all liens was $109,259.35, with $95,441.94 owed to the third party lienholder and $13,817.41 owed to the Borough. According to this third appeal calculation sheet, plaintiff was therefore due $96,778.70. This is the amount of the check that was given to plaintiffs attorney on April 4, 2008.
As was the case with the second set of calculations, the computer printout sheets (or lien redemption sheets) were not appended to the third appeal calculation sheet, so it is impossible to determine how the lien amounts were calculated. Mr. Lorentzen conceded that he could not explain how the refunds had been calculated without “backup,” meaning the computer printout lien redemption sheets.
Following a successful tax appeal by a taxpayer, municipalities are entitled to deduct from any tax refund due any amounts then delinquent, and apply that deduction to the delinquencies. N.J.S.A. 54:3-27.2; N.J.S.A. 54:4-134. It is thus clear that defendant is entitled to offset the delinquencies that resulted in the *136 defendant taking back the tax sale certificates on four of the five tax lots that were the subject of these appeals at the June 2006 tax sale. Defendant is entitled to deduct from the refund due plaintiff the actual delinquent taxes due on those parcels for tax year 2006 (computed on the basis of the reduced assessment set forth in the judgment entered on March 23, 2007), delinquent first quarter taxes for tax year 2007, interest at the rate chargeable by the municipality on delinquent taxes from the date that they were due until the date of the Tax Court judgment, and costs of the tax sale.
As for the tax sale certificate that had been held by the third party until acquired by the municipality in August 2007, defendant asserts that the holder of that certificate is entitled to receive the sum paid for the certificate with penalties and interest as if the certificates had been redeemed. It relies on Simon v. Voorhees Twp., supra, 289 N.J.Super. at 118-119, 672 A.2d 1292, where, as part of a settlement of tax appeals, the municipality and the property owner agreed that the municipality would take all steps necessary to set aside the sale of and to void tax sale certificates that had been sold to a third party to satisfy tax liens on the subject property for some of the tax years that had been at issue in the tax appeals. The issue in Simon was whether the certificate holders were entitled to the full redemption value of the certificates, including interest and redemption penalty at the rates that were bid and accepted by the municipality at the tax sale, or whether they were entitled to interest at the lesser post-judgment rate set forth at R. 4:42-ll(a), calculated from the date of the sale. The court concluded that the actions of the municipality amounted to a de facto redemption, and remanded to the trial court to determine the amounts due the certificate holders.
In this case, by contrast, there clearly was no agreement between the property owner and the municipality to set aside the tax sale certificates. The primary contention of plaintiff here is that there should have been no tax sale certificates. The defendant acquired the certificates from the third party holder in August 2007 in an effort to mitigate any further interest due on that certificate. Under the circumstances present here, where there was a dispute as to who was liable for interest and other *137 costs associated with that certificate, I conclude that the municipality acted reasonably and it is entitled to deduct from plaintiffs refund the monies that were necessary to redeem the certificate held by the third party. It is also entitled to deduct taxes and other municipal charges that became delinquent subsequent to the date of the tax sale that were not actually paid by the certificate owner together with interest at the municipal rate through the date of the Tax Court judgment on that parcel (Block 256, Lot 1).
However, I conclude that it was unreasonable for the defendant to retain undisputed amounts due the plaintiff until April 4, 2008. The settlement between plaintiff and defendant as memorialized in the Tax Court judgments provided that statutory interest pursuant to N.J.S.A. 54:3-27.2 would not be paid on the refund due the taxpayer provided the tax refund was paid within sixty days of entry of the Tax Court judgment. Although I found as a fact that Ms. Coraci Basile indicated to Mr. Lorentzen that the plaintiff would not accept a check for less than the amount it claimed, the defendant nevertheless had the use of all of the monies until payment of the undisputed amount, $96,778.70, was made to plaintiff on April 4, 2008. The payment of interest is not intended as a punishment or penalty but as reimbursement for loss of use of the funds. Defendant had the use of the funds and plaintiff should have the benefit of its bargain. Defendant should not have just offered to pay the undisputed amounts, but should have actually paid them to plaintiff within sixty days of the judgments, without prejudice to the rights of either to pursue the dispute. That is what defendant eventually did here. 9W Contractors, Inc. v. Englewood Cliffs Borough, 176 N.J.Super. 603, 1 N.J.Tax 465, 424 A.2d 461 (1980), relied upon by the defendant is distinguishable because the municipality actually sent payment vouchers to the taxpayer. Id. at 470, 424 A.2d 461. Consequently, defendant is directed to pay interest pursuant to N.J.S.A. 54:3-27.2 on the refund due the plaintiff, less the deductions previously noted, from the date of the judgments until April 8,2008.
Finally, both parties contend that they should be awarded attorneys’ fees for the costs of the motion. Neither party has provided any authority for such an award. “This court typically *138 will only grant counsel fees where one party can show ‘a conscious intentional failure or reckless indifference’ on behalf of the other party.” Petrie Retail, Inc. v. Town of Secaucus, 19 N.J.Tax 356, 365 (2001), aff'd, 21 N.J.Tax 263 (App.Div.), certif. denied, 177 N.J. 223, 827 A.2d 290 (2003) (citations omitted). I cannot conclude that either party has demonstrated the existence of these factors. The claims of both parties for counsel fees are therefore denied.
Counsel for defendant is directed to file with the court and serve on plaintiff by May 27, 2009, calculations of the refund due plaintiff consistent with this letter, supported by backup (whether in the form of lien redemption sheets similar to those contained in Mr. Lorentzen’s first set of calculations and submitted to the court as an exhibit or otherwise), sufficient for the court and plaintiff to determine how the numbers were reached. Each deduction from the refund (such as for interest, redemption penalty and so forth), shall show the statutory citation authorizing the deduction. On or before June 3, 2009, plaintiff shall file with the court and serve on defendant any objections to the calculation. If necessary, the court will rule on the submissions of the parties pursuant to R. 8:9-4.

 The files for each of these cases show that, although I signed the dispositions authorizing entry of all of these judgments on February 28, 2007, the judgments were entered on different dates. The files were sent to the Tax Court Management Office for entry of judgment during the same time period that the April 1 filing date for local property tax appeals was approaching. See N.J.SA. 54:3-21. It is probable that, because of the volume of work in the Tax Court Management Office, there was some delay in entering all of the judgments.

 A third letter, from Mr. Diegnan to plaintiff’s counsel dated September 6, 2006, was also appended to plaintiff’s counsel’s certification in support of the motion. The letter requests metes and bounds information for easements on the subject property in connection with a proposal for settlement of the tax appeals that was apparently then under discussion. The letter makes no mention of tax payments.

 Defendant contended in its initial response to this motion that the judgment for tax year 2006 should be vacated due to the plaintiff’s failure to pay tax as required by N.J.S.A. 54:3-27, but abandoned that position at oral argument. I indicated at that time that the failure of the municipality to make a timely motion to dismiss for failure to pay taxes, when plaintiff had already indicated its intent not to pay its 2006 taxes, likely constituted a waiver of the municipality’s right to seek to upset the settlement for 2006 on the basis of unpaid taxes, particularly where the settlement for each of the years in issue formed a basis for the settlement of all years. See also, Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990) and Seacoast Realty Co. v. Borough of West Long Branch, 14 N.J. Tax 197, 201 (1994), both holding that settlement agreements may be vacated only when there is clear and convincing proof of compelling circumstances warranting relief. Moreover, a tax sale certificate for the overdue taxes on one parcel had been sold to a third party prior to the time that the municipality raised the issue for the first time, thereby precluding a dismissal for unpaid taxes pursuant to N.J.S.A. 54:3-27, at least as to that one lot, which had by far the largest assessment of the five tax lots under appeal. See Echelon Glen Cooperative, Inc. v. Township of Voorhees, 275 N.J.Super. 441, 646 A.2d 498 (App.Div. 1994).

 It is not clear from the opinion whether this overpayment resulted from the proceeds of the sale of the tax sale certificate or if other tax payments had made by the property owner.

 On the second set of calculations, a different tax rate (.0439), was used than on the first set (.0456) in calculating the tax for 2007.